No. 23-1654

## In the
## United States Court of Appeals for the Seventh Circuit

CONSUMER FINANCIAL PROTECTION BUREAU,
*Plaintiff-Appellant*,

v.

TOWNSTONE FINANCIAL, INC., AND BARRY STURNER,
*Defendants-Appellees.*

**On Appeal from the**
**United States District Court for**
**the Northern District of Illinois**

**Brief *Amicus Curiae* of**
**America's Future,**
**Free Speech Coalition,**
**Free Speech Defense and Education Fund,**
**U.S. Constitutional Rights Legal Defense Fund, and**
**Conservative Legal Defense and Education Fund**
**in Support of Defendants-Appellees and Affirmance**

RICK BOYER                WILLIAM J. OLSON*
 Lynchburg, VA            JEREMIAH L. MORGAN
                             WILLIAM J. OLSON, P.C.
PATRICK M. MCSWEENEY       370 Maple Avenue West, Suite 4
 Powhatan, VA             Vienna, VA  22180-5615
                          (703) 356-5070
JAMES N. CLYMER           *Attorneys for Amici Curiae*
 Lancaster, PA

J. MARK BREWER            *Attorney of Record
 Houston, TX              August 21, 2023

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-1654</u>

Short Caption: <u>CFPB v. Townstone Financial Inc., et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>William J. Olson, P.C., Integrity Law Firm, Clymer Musser & Sarno, P.C., Brewer & Pritchard, P.C.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>None</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ William J. Olson</u>      Date: <u>August 21, 2023</u>

Attorney's Printed Name: <u>William J. Olson</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑   No ☐

Address: <u>370 Maple Avenue West, Suite 4</u>

        <u>Vienna, VA 22180</u>

Phone Number: <u>703-356-5070</u>      Fax Number: <u>703-356-5085</u>

E-Mail Address: <u>wjo@mindspring.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1654

Short Caption: CFPB v. Townstone Financial Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

William J. Olson, P.C., Integrity Law Firm, Clymer Musser & Sarno, P.C., Brewer & Pritchard, P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jeremiah L. Morgan    Date: August 21, 2023

Attorney's Printed Name: Jeremiah L. Morgan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 370 Maple Avenue West, Suite 4

Vienna, VA 22180

Phone Number: 703-356-5070    Fax Number: 703-356-5085

E-Mail Address: jmorgan@lawandfreedom.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1654

Short Caption: CFPB v. Townstone Financial Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

       ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, U.S. Constitutional Rights Legal

Defense Fund, and Conservative Legal Defense and Education Fund

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

William J. Olson, P.C., Integrity Law Firm, Clymer Musser & Sarno, P.C., Brewer & Pritchard, P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Rick Boyer    Date: August 21, 2023

Attorney's Printed Name: Rick Boyer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: P.O. Box 10953

Lynchburg, VA 24506

Phone Number: 434-401-2093    Fax Number:

E-Mail Address: rickboyerlaw@gmail.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1654

Short Caption: CFPB v. Townstone Financial Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, U.S. Constitutional Rights Legal

Defense Fund, and Conservative Legal Defense and Education Fund

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

William J. Olson, P.C., Integrity Law Firm, Clymer Musser & Sarno, P.C., Brewer & Pritchard, P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Patrick M. McSweeney    Date: August 21, 2023

Attorney's Printed Name: Patrick M. McSweeney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✓]

Address: 3358 John Tree Hill Rd.

Powhatan, VA 23139

Phone Number: 703-621-3300    Fax Number:

E-Mail Address: patrick@mck-lawyers.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-1654</u>

Short Caption: <u>CFPB v. Townstone Financial Inc., et al.</u>

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, U.S. Constitutional Rights Legal</u>

<u>Defense Fund, and Conservative Legal Defense and Education Fund</u>

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>William J. Olson, P.C., Integrity Law Firm, Clymer Musser & Sarno, P.C., Brewer & Pritchard, P.C.</u>

(3)   If the party, amicus or intervenor is a corporation:

   i)    Identify all its parent corporations, if any; and

     <u>None</u>

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     <u>None</u>

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ James N. Clymer</u>    Date: <u>August 21, 2023</u>

Attorney's Printed Name: <u>James N. Clymer</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address: <u>408 West Chestnut St.</u>

    <u>Lancaster, PA 17603</u>

Phone Number: <u>717-299-7101</u>    Fax Number: _____

E-Mail Address: <u>jim@clymerlaw.com</u>

rev. 12/19 AK

Save As          Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1654

Short Caption: CFPB v. Townstone Financial Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, U.S. Constitutional Rights Legal

Defense Fund, and Conservative Legal Defense and Education Fund

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

William J. Olson, P.C., Integrity Law Firm, Clymer Musser & Sarno, P.C., Brewer & Pritchard, P.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ J. Mark Brewer    Date: August 21, 2023

Attorney's Printed Name:  J. Mark Brewer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address:  800 Bering Drive, Suite 201A

Houston, TX 77057

Phone Number: 713-209-2950    Fax Number:

E-Mail Address: brewer@bplaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

I.     CFPB'S ENFORCEMENT ACTIONS AGAINST TOWNSTONE FINANCIAL
       WERE WHOLLY UNRELATED TO ITS STATUTORY AUTHORITY . . . . . . . . . . . 6

       A.     CFPB Has No Statutory Authority to Regulate with Regard to
              Prospective Applicants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       B.     Should this Court Believe CFPB Has Authority to Regulate
              with Respect to Prospective Applicants, It Does Not Authorize
              this Enforcement Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.    CFPB'S REGULATION B AND ITS ENFORCEMENT IS BEST
       UNDERSTOOD ACCORDING TO CRITICAL RACE THEORY . . . . . . . . . . . . . . . 9

       A.     While CFPB's Enforcement Action Against Townstone Is
              Irrational, it Is Consistent with Critical Race Theory . . . . . . . . . . . . 9

       B.     Government Enforcement of Critical Race Theory Violates the
              First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.   CFPB'S LONG HISTORY OF PARTISAN POLITICAL ACTIONS REVEALS
       THE POLITICAL NATURE OF ITS ENFORCEMENT OF REGULATION B
       AGAINST TOWNSTONE FINANCIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       A.     The Democratic Party Created the CFPB in Its Own Image. . . . . . . 16

B.    The CFPB Quickly Demonstrated Its Partisan Agenda . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

Page

STATUTES
15 U.S.C. § 1691 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6

REGULATIONS
12 C.F.R. § 1002.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6

CASES
*Knox v. SEIU*, 567 U.S. 298 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

MISCELLANEOUS
4 Annals of Cong. 934 (1794) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
A. Ackerman, "Senate Confirms Chopra to Head Consumer Financial
     Protection Bureau," *Wall Street Journal* (Sept. 30, 2021) . . . . . . . . . . . . 22
R. Delgado & J. Stefancic, Critical Race Theory: An Introduction (3ʳᵈ edt)
     (NYU Press: 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13
R. Delgado & J. Stefancic, "Living History Interview with Richard
     Delgado & Jean Stefancic," 19 Transnat'l L. & Contemp. Probs.
     221 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
C. Demaske, "Critical Race Theory," *The First Amendment Encyclopedia* . . . . . 11
R. Epstein, "Richard Shelby: Cordray is DOA," *Politico* (July 21, 2011) . . . . . . 18
GMMB.com, "What Do Presidents Joe Biden, Barack Obama and Bill
     Clinton Have in Common?". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
M. Gonzalez & K. Gorka, "How Cultural Marxism Threatens the United
     States — and How Americans Can Fight It," *Heritage Foundation*
     (Nov. 14. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
K. Hetherington, "Using recess power, Obama putting Cordray in job,"
     *Daily Caller* (Jan. 4, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
E. Katz, "Biden Employs Aggressive Strategy to Sideline Top Career
     Officials at Consumer Protection Bureau," *GovernmentExecutive.com*
     (June 14, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22
S. Kennedy, J. Richwine & S. Camarota, "Misuse of Texas Data
     Understates Illegal Immigrant Criminality," *Center for Immigration
     Studies* (Oct. 11, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
M.L. King, "I Have a Dream Speech" (Aug. 18, 1963). . . . . . . . . . . . . . . . . . . . 12

S. Lane, "GOP slams top consumer watchdog at hearing, alleging overreach," *The Hill* (Apr. 26, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A. Madhani, "Chicago's murder rate soars 72% in 2016; shootings up more than 88%," *USA Today* (Apr. 1, 2016) . . . . . . . . . . . . . . . . . . . . . . . . 7

M. McConnell, "Letter to President Barack Obama" (May 2, 2011) . . . . . . . 17, 18

B. McMorris, "100% of CFPB Donations Went to Democrats," *Washington Free Beacon* (Nov. 23, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . 21

S. Moore, "The Supreme Court Should End the CFPB's Reign of Regulatory Terror," *National Review* (May 16, 2023) . . . . . . . . . . . . . . . 22

"President Obama Names Elizabeth Warren Assistant to the President and Special Advisor to the Secretary of the Treasury on the Consumer Financial Protection Bureau," *White House* (Sept. 17, 2010) . . . . . . . . . . . 16

R. Rubin, "Richard Cordray Delivers the Consumer Financial Protection Bureau Punchline," *National Review* (Nov. 27, 2017) . . . . . . . . . . . . . . . . 20

R. Rubin, "The Tragic Downfall of the Consumer Financial Protection Bureau," *National Review* (Dec. 21, 2016) . . . . . . . . . . . . . . . . . . . . . . . 17, 19

C. Rufo, <u>America's Cultural Revolution</u> (Broadside Books: 2023) . . . . . 13, 14, 15

M. Saman, <u>DuBois and Marx, DuBois and Marxism</u> (Cambridge Univ. Press: 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Michael Shellenberger, "<u>The Censorship Industrial Complex</u>," Testimony to House Select Committee on the Weaponization of the Federal Government (March 9, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

R. Smith, "Hensarling: CFPB is Cordray's partisan 'war machine'," *MPAMag.com* (May 19, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

## INTEREST OF *AMICI CURIAE*

America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund are exempt from federal income taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code. Each is dedicated, *inter alia*, to the correct construction, interpretation, and application of the law.[1]

## STATEMENT OF THE CASE

The Equal Credit Opportunity Act ("ECOA"), enacted October 28, 1974, makes it "unlawful for any creditor to discriminate against any **applicant**, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age...." 15 U.S.C. § 1691(a) (emphasis added). In 2016, the Consumer Financial Protection Bureau ("CFPB") adopted Regulation B in its current form, which purports to extend the ECOA's prohibition to "**prospective applicants**." 12 C.F.R. § 1002.4(b) (emphasis added). On July

---

[1] These *amici* sought and received the consent of the parties to the filing of this *amicus* brief. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

15, 2020, the CFPB filed suit against Townstone Financial, Inc., a mortgage lender in Chicago, Illinois, alleging violations of both the ECOA and Regulation B.

CFPB alleged a violation primarily based on "statements during [Townstone's] weekly radio shows and podcasts through which it marketed its services."[2]  For example, the complaint alleged that the host on Townstone's show made statements to the effect that "it's crazy in Markham on weekends," and "You drive very fast through Markham ... and you don't look at anybody or lock on anybody's eyes in Markham....  You look at your dashboard, you don't lock on anybody."  *Bureau of Consumer Fin. Prot. v. Townstone Fin., Inc.*, 2023 U.S. Dist. LEXIS 18405 at *4 (N.D. Ill. 2023).  Despite there being no racial content to these statements, the CFPB alleged them to be racist because Markham is "a city with an 80.3% African-American population," and it believed the statements were intended to "discourage African-American prospective applicants from applying for mortgage loans...."  On another episode, the host "volunteered his view [that] the South Side of Chicago ... is 'hoodlum weekend' between Friday and Monday...."  Because South Side is "majority-African American," CFPB alleged the statement was intended to "discourage African-American prospective applicants from applying for mortgage loans from Townstone."  *Id.* at *5.

---

Townstone moved to dismiss, arguing that "the CFPB improperly attempts to expand the ECOA's reach beyond the express and unambiguous language of the statute." *Id*. at *10.

The district court found Regulation B to be outside CFPB's statutory authority noting that "the word 'applicant' is used twenty-six times in the statute, and the statute does not prohibit or discuss conduct prior to the filing of an application." *Id*. at *18-19. The district court dismissed the case, explaining: "The plain text of the ECOA thus clearly and unambiguously prohibits discrimination against **applicants**, which the ECOA clearly and unambiguously defines as **a person who applies to a creditor for credit**. 15 U.S.C. §§ 1691(a), 1691a(b)." *Id*. at 13 (internal quotation omitted) (emphasis added).

## STATEMENT

This case reveals the Consumer Finance Protection Board to be an agency so committed to the "politically correct" goal of ending "racially discriminatory practices" that it has perceived them where they did not exist so it could punish those engaged in "wrong speak" where it has no statutory authority whatsoever.

Established during a brief period of one-party rule over the political branches of our national government, the CFPB was granted extraordinary independence so it could function totally "independent of politics." In truth, that

independence has allowed CFPB to operate without accountability, allowing it to function as a hyper-partisan agency, using its regulatory authority to advance the partisan political views of those who designed, created, and still run it.  It has become a rogue agency.

The narrow issue presented by the district court's ruling was one of statutory interpretation, on which it reached the obvious and correct result. Congress enacted the Equal Credit Opportunity Act to prohibit conduct by mortgage lenders that "discriminate[s] against any **applicant**."  15 U.S.C. § 1691(a) (emphasis added).  CFPB never had authority under this statute to promulgate "Regulation B" which provides that "[a] creditor shall not make any **oral or written statement**, in advertising or otherwise, to applicants or **prospective applicants** that would discourage on a prohibited basis a reasonable person from making or pursuing an application."  12 C.F.R. § 1002.4(b) (emphasis added).  Thus, its suit against Townstone Financial was properly dismissed.

At one level, this case is significant because, yet again, it shows that agencies created by Congress often act in a lawless fashion by exercising raw regulatory power over Americans that they do not have.  In this case, CFPB's clear usurpation of authority to regulate beyond authority given by Congress over

"applicants" for credit demonstrates how brazen and abusive some agencies have become.

However, Regulation B and its enforcement action here is not just jurisdictionally wrong, but wrong at every level. CFPB's promulgation and enforcement of Regulation B is a blatant attempt by the CFPB — which may be the most radical leftist agency in the entire national government — to single out, censor, and punish "wrong speech." CFPB seeks to join other branches of the national government which have been weaponized to censor and suppress speech. Regulation B imposes a prior restraint on speech and press rights deeply offensive to First Amendment protections. It constitutes impermissible viewpoint discrimination. It empowers CFPB to look into the minds and hearts of Americans to misconstrue comments about crime and lawlessness to support claims of racism in a way best understood as "Critical Race Theory." And, most invidiously, it allows CFPB to shamelessly play the "race card" to impugn, censor, and punish those Americans who had thought they still could speak freely about vital public policy problems. CFPB has been perhaps the least nonpartisan agency in the national government, and it was designed to be exactly that. With Regulation B and this enforcement action, CFPB has joined the speech police and declared itself to be at war with the First Amendment.

5

**ARGUMENT**

I.   **CFPB'S ENFORCEMENT ACTIONS AGAINST TOWNSTONE FINANCIAL WERE WHOLLY UNRELATED TO ITS STATUTORY AUTHORITY.**

    A.    **CFPB Has No Statutory Authority to Regulate with Regard to Prospective Applicants.**

Regulation B provides that "[a] creditor shall not make any **oral or written statement**, in advertising or otherwise, to applicants or **prospective applicants** that would discourage on a prohibited basis a reasonable person from making or pursuing an application."  12 C.F.R. § 1002.4(b) (emphasis added).  As such, it far exceeds the authority granted to that agency by the Equal Credit Opportunity Act, which extends only to prohibit conduct by lenders that "discriminate against any **applicant**."  15 U.S.C. § 1691(a) (emphasis added).  The CFPB's Regulation B is wholly unrelated to its statutory task of preventing actual discrimination relating to actual applicants seeking actual credit.  Rather, it converts the agency into a federal speech police agency, with authority to prevent and punish any "statements" made by lenders that might conceivably "discourage" a limitless universe of "prospective applicants."  This was the basis for the district court's dismissal of CFPB's enforcement action, and these *amici* urge this Court to affirm the district court on this threshold jurisdictional issue.

6

**B.      Should this Court Believe CFPB Has Authority to Regulate with Respect to Prospective Applicants, It Does Not Authorize this Enforcement Action.**

Assuming *arguendo* that CFPB has jurisdiction over prospective applicants pursuant to the vast mandate that CFPB  bestowed upon itself, the facts do not support its case.   CFPB filed suit against Townstone Financial, alleging that on its radio show and podcast, hosts had made various comments that might "discourage" potential "prospective applicants" on the basis of race or national origin.  An examination of the specific charges made against Townstone Financial reveals how far from preventing actual discrimination the CFPB is now operating.

CFPB viewed the following statements as being actionably racist:

- a 2014 statement that "You drive very fast through Markham, [Illinois, a Chicago suburb] and you don't look at anybody or lock on anybody's eyes in Markham" — deemed racially based, solely because Markham has "an 80.3% African-American population." *Townstone Fin.* at *4.

- a 2016 statement that "the South Side of Chicago is 'hoodlum weekend' between Friday and Monday, and that the police are 'the only ones between that [area] turning into a real war zone and keeping it where it's kind of at.'"  *Id*. at *5.  The context was that Chicago shootings increased 88 percent over the first three months of 2016,[3] and "the disturbing rise in violence is driven by gangs and mostly contained to a handful of pockets on the city's South and West sides."  *Id*.

---

[3]  A. Madhani, "Chicago's murder rate soars 72% in 2016; shootings up more than 88%," *USA Today* (Apr. 1, 2016).

CFPB makes no allowance for the possibility that Townstone's comment was simply recognizing the historically high crime in South Chicago.  Under its theory, simply because the area is "majority African-American," any reference to its actual crime rate strikes CFPB as likely to "discourage" some "prospective applicant" for credit somewhere.  Even if this statement would discourage someone from buying a house in South Chicago, would that stop a home buyer from applying for credit to move into a safer neighborhood?

In 2017, a Townstone host referred to a recently closed Jewel grocery store in downtown Chicago.  He called it the "Jungle Jewel," a "scary place," and "attribut[ed] his fear and the store's nickname to the 'Jungle Jewel's' patrons who 'packed' the store and 'were people from all over the world.'"  *Townstone Fin.* at *5-6.  Even though it is "politically incorrect" to mention, there are studies that demonstrate immigrants who enter the United States illegally are in fact a more significant risk to commit violent crimes than native-born Americans.[4]  Even if CFPB had jurisdiction to regulate prospective customers, nothing in the host's comments suggested that Townstone would not finance a mortgage for a customer because that customer was native to another country.  But CFPB again somehow

---

[4]  S. Kennedy, J. Richwine & S. Camarota, "Misuse of Texas Data Understates Illegal Immigrant Criminality," *Center for Immigration Studies* (Oct. 11, 2022).

divined a discriminatory intent to discourage someone from seeking credit that is not apparent from the statements made.

CFPB's racial sensitivity meter is certainly set on high. It reflects the premise that racial prejudice exists everywhere and is used in the most subtle ways to oppress and exploit minorities. It reflects the view that these statements by creditors are only part of an effort to maintain social, economic, and political inequalities between whites and nonwhites. The school of thought which leads people to such conclusions is "Critical Race Theory" ("CRT").[5] To understand what motivates CFPB to find racism everywhere, it is helpful to examine the basics of that insidious doctrine.

## II.    CFPB'S REGULATION B AND ITS ENFORCEMENT IS BEST UNDERSTOOD ACCORDING TO CRITICAL RACE THEORY.

### A.    While CFPB's Enforcement Action Against Townstone Is Irrational, it Is Consistent with Critical Race Theory.

Appellant CFPB's Brief characterizes racially neutral and objectively factual comments about crime in certain cities that were made during Townstone's weekly one-hour talk show as "comments that **disparaged** African Americans and African-American neighborhoods." Aplt. Br. at 8. CFPB also says they "**demeaned** African-American neighborhoods and African Americans...." *Id*. at 7.

---

[5]  *See* "critical race theory," *Britannica*.

Under CFPB's theory, it would be impossible for regulated companies to comment on urban crime, which nicely would meet the objective of those who wish to avoid criticism of the effects of leftist political control of cities, prosecutors, and restrictions on police. CFPB's allegations are designed to silence and censor those voices which do not support the leftist "narrative." However, if there is "disparaging" and "demeaning" being done, it is done of Townstone by CFPB. As pointed out in Appellee's Brief, CFPB "excerpted only small portions of the comments" that were "a tiny portion of the shows in which they were made ... during the years in which the weekly, one-hour show was aired...." Aple. Br. at 2. CFPB illustrates the CRT tactic of imputing "racism" to others in order to silence them, and achieve power over them.

Those who embrace Critical Race Theory have no problem with a robust understanding of discrimination even if it results in suppressing or punishing speech. Indeed, they have no respect for the First Amendment or the case law that surrounds it, as they take the position that:

> the **First Amendment actually serves to preserve the inequities** of the status quo; there can be no such thing as an objective or content neutral interpretation in law in general or of the First Amendment in particular; some speech should be viewed in terms of the harm it causes, rather than all speech being valued on the basis of it being speech; and there is no "equality" in "freedom" of speech. [C.

Demaske, "Critical Race Theory," *The First Amendment Encyclopedia* (emphasis added).]

If Critical Race Theory has no regard for the U.S. Constitution, it is reasonable to ask what is its guiding principle.  Insight into that issue can come from the writings of one of CRT's most influential legal theoreticians, Law Professor Richard Delgado and his wife Jean Stefancic.  His primer is Critical Race Theory: An Introduction, originally published in 2001, and now in its third edition[6] where he explains:

> The critical race theory (CRT) movement is a collection of activists and scholars engaged in studying and **transforming the relationship among race, racism, and power**....  [C]ritical race theory **questions** the very foundations of the liberal order, including equality theory, legal reasoning, Enlightenment rationalism, and **neutral principles of constitutional law**.  [*Id*. at 3 (emphasis added).]

Delgaudo explains it "draws from" several theorists including Italian Marxist Antonio Gramsci and W.E.B. DuBois who "embrace[d] Soviet communism in the 1920s, and culminating in the 1930s in his teaching of Marx at Atlanta University and the overtly Marxian positions he adopts in *Black Reconstruction* (1935)."[7]  In

---

[6]  R. Delgado & J. Stefancic, Critical Race Theory: An Introduction (3rd edt) (NYU Press: 2017).

[7]  M. Saman, DuBois and Marx, DuBois and Marxism at abstract (Cambridge Univ. Press: 2020).

2010, Delgado referred to the founders of CRT as "a bunch of Marxists."[8]  The

description of CRT as "Cultural Marxism" is fully justified.[9]

After indicting Western Civilization for racism, it renders its analysis

unchallengeable because "Minority status ... brings with it a presumed competence

to speak about race and racism."[10]  Critical Race Theory at 11.  Although it claims

CRT to also be sourced in Martin Luther King, it rejects one of his central tenets:

> I have a dream that my four little children will one day live in a nation
> where they will not be judged by the color of their skin but by the
> content of their character.  [M.L. King "I Have a Dream Speech"
> (Aug. 18, 1963) quoted and discussed in G. Robinson, "The Content
> of Their Character: King's Theme Across the Years," *AEI* (Jan. 17,
> 2020).]

From that principle, Delgado demurs:  "Color blindness can be admirable....  But it

can be perverse, for example, when it stands in the way of taking account of

differences in order to help people in need....  Only aggressive, color-conscious

---

[8]  R. Delgado & J. Stefancic, "Living History Interview with Richard Delgado & Jean Stefancic," *Seattle Univ. School of Law Digital Commons* (2011).

[9]  *See* M. Gonzalez & K. Gorka, "How Cultural Marxism Threatens the United States — and How Americans Can Fight It," *Heritage Foundation* (Nov. 14. 2022) ("Cloaking their goals under the pretense of social justice, these cultural Marxists want to distort America's history and dismantle its very foundations.").

[10]  Delgado, though leading a privileged life with two bachelors degrees from the University of Washington, and a law degree from University of California-Berkley, preserves his ability to speak on CRT issues since his father was a Mexican-American.

efforts to change the way things are will do much to ameliorate misery...." *Id*. at

27.  Delgado's primer  identifies CRT to be not just a way at looking at race, but

as illustrating the need to give political support for liberal programs such as

"welfare, affirmative action, or other programs vital to the poor and minorities,"

and to oppose conservative programs such as to "militarize [defend] the border."

*Id*. at 30.

One of the leading students of the CRT movement, Christopher Rufo,

identifies its  basic strategy:  "silence, marginalize, and suppress — all somehow,

in the name of tolerance and an open society."[11]  That description fits nicely with

the CFPB approach to Townstone Financial.  By characterizing its radio banter as

racist, it marginalizes its views, and seeks to use the power of the national

government to silence its voice, and suppress others who might want to enjoy the

freedom to speak openly in America.

Christopher Rufo's recently published book, America's Cultural

Revolution: How the Radical Left Conquered Everything, provides an important

counterpoint to the works of Delgado and other spokesmen for CRT/Cultural

Marxism on race and law.  It traces the tactics and success of the capture of

America's key institutions by an alien Marxist ideology.  Rufo explains:

---

[11]  C. Rufo, America's Cultural Revolution at ix (Broadside Books: 2023).

The critical theories of 1968 have turned into a substitute morality; racism is elevated into the highest principle; society is divided into a crude moral binary of "racist" and "anti-racist"; and a new bureaucratic logic is required to adjudicate guilt and redistribute wealth, power and privilege.  To enforce this new orthodoxy, left-wing activists have established departments of "diversity, equity, and inclusion" across an entire stratum of the public and private bureaucracies.  Allies are rewarded with status, position, and employment.  Dissenters are shamed, marginalized, and sent into moral exile.  [*Id*. at 4.]

This is not a movement that seeks to persuade, but to coerce.  One of its founders, Herbert Marcuse, explains that there must be a policy of "intolerance even toward thought, opinion, and word...."[12]  Thus, the nation is confronting a political movement which demands that Constitutional rights be set aside — in the name of the revolution.  It is among the responsibilities of the federal judiciary to ensure that the CFPB, which is one of the institutions of our national government that has been fully captured by extreme leftist ideologues who would be very comfortable with Delgado and Marcuse, does not use its power to silence, marginalize, and suppress.

**B.     Government Enforcement of Critical Race Theory Violates the First Amendment.**

Supporters of Critical Race Theory first captured academic and professional institutions and became comfortable to using the power that those posts gave them

---

[12]  *Id*. at 23.

14

to crush their ideological opponents.  Given the low view that supporters of

Critical Race Theory have of the U.S. Constitution and the First Amendment, it is

not surprising that they give little thought to constitutional constraints that limit

their power when they seize and exercise government power to marginalize and

censor opposing views.

The Brief of Defendants-Appellees explains three ways in which CFPB's

enforcement action violates the First Amendment, including content and viewpoint

discrimination.  *See* Aple. Br. at 45-48.  To this analysis we add only that CFPB's

efforts to censor Townstone Financial's AM radio show to prevent discussion of

big city crime in the name of fighting racism should not be viewed in isolation.  It

is part of a broader problem of censorship that is done in the public interest.  In

Congressional testimony, Journalist Michael Shellenberger described the related

threat from the national government's "Censorship Industrial Complex."[13]

Whether the censorship be over radio or the Internet, in the United States, no

government agency has the authority to suppress public policy discussion,

especially when it includes explicit or implicit criticism of government policies an

---

[13]  Michael Shellenberger, "The Censorship Industrial Complex," Testimony to House Select Committee on the Weaponization of the Federal Government (March 9, 2023).

incumbent office holders.  As Justice Alito explained in *Knox v. SEIU*, 567 U.S. 298 (2012):

> The First Amendment creates "an open marketplace" in which differing ideas about political, economic, and social issues can compete freely for public acceptance without improper government interference... **The government may not prohibit the dissemination of ideas that it disfavors**, nor compel the endorsement of ideas that it approves.  [*Id*. at 309 (citations omitted).]

CFPB appears to have forgotten what James Madison explained so clearly, that: "the censorial power is in the people over the government, and not in the government over the people."  4 Annals of Cong. 934 (1794).

## III.  CFPB'S LONG HISTORY OF PARTISAN POLITICAL ACTIONS REVEALS THE POLITICAL NATURE OF ITS ENFORCEMENT OF REGULATION B AGAINST TOWNSTONE FINANCIAL.

### A.  The Democratic Party Created the CFPB in Its Own Image.

CFPB was not a pre-existing institution that was captured by the CRT Movement.  Rather, it was created by devotees of the CRT Movement, and quite cleverly so, to silence, marginalize, and suppress.  When CFPB was created by Congress in 2010, Democrats controlled both houses of Congress and the Presidency.  That September, President Barack Obama chose Elizabeth Warren to set up the agency.  *See* "President Obama Names Elizabeth Warren Assistant to the President and Special Advisor to the Secretary of the Treasury on the

16

Consumer Financial Protection Bureau," *White House* (Sept. 17, 2010).  As a law professor, Warren had urged creation of a consumer protection agency "independent from politicians beholden to the financial industry."  *See* R. Rubin, "The Tragic Downfall of the Consumer Financial Protection Bureau," *National Review* (Dec. 21, 2016).  But by 2010, majority "Democrats had a better idea: They would make her agency independent from Republicans."  *Id*.  Indeed, it was immunized from the Congressional appropriations process in a unique way, by simply demanding funds be placed into its account by the Federal Reserve System.  The U.S. Supreme Court has granted merits review and soon will determine the constitutionality of that unique funding mechanism.[14]

Republicans recaptured the House in the 2010 elections, but Democrats maintained control of the Presidency and the Senate.  The CFPB could not promulgate regulations until a director was appointed and confirmed.  On May 2, 2011, 44 Senate Republicans sent a letter to Obama demanding structural reforms to the CFPB before they would agree to vote on any director.  *See* M. McConnell, "Letter to President Barack Obama" (May 2, 2011).  The Senators demanded that "[t]o ensure that the CFPB does not engage in wasteful or inappropriate spending

---

[14]  *See CFPB v. Community Financial Services*, U.S. Supreme Court No. 22-448; *see also* Brief Amicus Curiae of America's Future, et al. on Writ of Certiorari (July 10, 2023).

and has effective oversight, the CFPB should be subject to the congressional appropriations process." *Id.*

In July 2011, President Obama nominated Richard Cordray, a former Democrat Ohio attorney general, to head the agency. Senator Richard Shelby (R-AL) pledged to filibuster Cordray's nomination until the CFPB was restructured. *See* R. Epstein, "Richard Shelby: Cordray is DOA," *Politico* (July 21, 2011). But on January 4, 2012, President Obama simply did an end run around the Senate, using the recess appointment power to put Cordray into his position. *See* K. Hetherington, "Using recess power, Obama putting Cordray in job," *Daily Caller* (Jan. 4, 2012).

Cordray ran the CFPB until resigning in November 2017 to run as the Democratic candidate for Ohio governor in 2018. In May 2017, prior to leaving the agency, Cordray met with the House Democratic Caucus, sparking outrage from Congressman Jeb Hensarling (R-TX), the chairman of the House Financial Services Committee. "[H]is attendance at what amounts to nothing more than a Democrat pep rally shows just how partisan and politicized he and his supposed

'independent' agency truly are," said Hensarling, calling the CFPB a partisan "political war machine."[15]

## B.    The CFPB Quickly Demonstrated Its Partisan Agenda.

In December, 2016, former CFPB enforcement attorney Ronald Rubin published a whistleblower expose of the efforts of Warren and Cordray to cement the CFPB as an openly partisan agency.  "Warren ... led the one-year agency-building process.  She chose loyal Democrats to be her senior deputies; they hired like-minded middle managers, who in turn screened lower-level job seekers," Rubin wrote.  "[M]istakes were possible. I was one of them."  *See* R. Rubin, "The Tragic Downfall of the Consumer Financial Protection Bureau," *National Review* (Dec. 21, 2016).  Later, "[a]s screening techniques improved, Republicans were more easily identified and rejected."  *Id.*

Clear verbal and non-verbal signals quickly emerged.  The most common, "I don't think he believes in the mission" was code for "he might not be a Democrat."  *Id*.  At one meeting, Kent Markus, a former Clinton-administration lawyer who had joined the bureau as Cordray's deputy, remarked that an applicant under consideration "sounds like a good liberal to me."  After a few seconds of

---

[15]  R. Smith, "Hensarling: CFPB is Cordray's partisan 'war machine'," *MPAMag.com* (May 19, 2017).

nervous laughter and eye contact around the room, Markus recognized his slip.  "I didn't say that," he awkwardly joked.  *Id*.

According to Rubin, the CFPB used its funds from the Fed to benefit Democratic causes.  "[M]illions of dollars were diverted from the CFPB to Democratic allies.  From 2014 to 2017, the bureau paid $11 million a year to rent office space in an Obama fundraiser's building."  *See* R. Rubin, "Richard Cordray Delivers the Consumer Financial Protection Bureau Punchline," *National Review* (Nov. 27, 2017).  To help with marketing its agenda, "the bureau paid over $43 million to GMMB, the liberal advocacy group that created ads for the Obama and Hillary Clinton presidential campaigns" (*id*.), (as well as Bill Clinton's and Joe Biden's campaigns).  *See* GMMB.com, "What Do Presidents Joe Biden, Barack Obama and Bill Clinton Have in Common?"

"From 2011 to 2016, Republicans regularly passed legislation to restructure the CFPB as a bipartisan commission and bring its funding under the congressional appropriations process.  Democrats labeled and rejected all changes as attempts to weaken consumer protection."  *See* R. Rubin, *The Tragic Downfall, supra*.

In 2016, the CFPB won the title of "the most partisan agency in the federal government" in terms of donations given to political candidates by agency

employees.  Some 300 reportable employee donations occurred that year, with 100

percent of employee donations going to Democrat candidates, in particular Sens.

Hillary Clinton and Bernie Sanders' presidential campaigns.[16]  "CFPB employees

fell over each other to give money to Hillary because she supported CFPB's desire

to remain in the shadows and unaccountable to the American people," argued Rep.

Sean Duffy (R-WI).  *Id.*

 According to *Government Executive*, as soon as the Biden administration

took over, it began to pursue an "aggressive strategy" to ensure it could "install its

own hires into top career positions at the Consumer Financial Protection Bureau

and push out officials who served under President Trump."[17]  The CFPB "offered

separation incentives including early retirement and launched investigations into

career senior executives to sideline them, targeting about a half-dozen of the

highest-ranked non-political staffers at the bureau."  *Id.*

 "It's very clear what's happening — it's forcing people out who are not

political actors.  This is being done in a pretty underhanded way and, frankly, they

---

 [16]  B. McMorris, "100% of CFPB Donations Went to Democrats,"
*Washington Free Beacon* (Nov. 23, 2016).

 [17]  E. Katz, "Biden Employs Aggressive Strategy to Sideline Top Career
Officials at Consumer Protection Bureau," *GovernmentExecutive.com* (June 14,
2021).

are getting away with it," said one former employee. "I voted for Biden and I'm getting ousted because I was hired by the previous people," said another employee. "It's not my fault." *Id.*

One of Warren's initial hires was Rohit Chopra, whom she hired as CFPB's student-loan ombudsman under Obama's presidency.[18] Chopra was confirmed 50-48 on September 30, 2021 as head of the CFPB, appointed by President Biden. *Id.* As *The Hill* reports, rank partisanship continues to mark Chopra's CFPB. Under his "progressive firebrand" leadership, the CFPB has "launched a series of rulemaking efforts [and] investigations ... lauded by Democrats and fiercely criticized by Republicans."[19]

It is no surprise that under Chopra, the bureau has "broadened what it considers to be racially discriminatory practices." *Id.* In the words of economist Stephen Moore, it's time to "End the CFPB's Reign of Regulatory Terror."[20]

---

[18] A. Ackerman, "Senate Confirms Chopra to Head Consumer Financial Protection Bureau," *Wall Street Journal* (Sept. 30, 2021).

[19] S. Lane, "GOP slams top consumer watchdog at hearing, alleging overreach," *The Hill* (Apr. 26, 2022).

[20] S. Moore, "The Supreme Court Should End the CFPB's Reign of Regulatory Terror," *National Review* (May 16, 2023).

## CONCLUSION

For the foregoing reasons, the district court decision should be affirmed.

Respectfully submitted,

  /s/ *William J. Olson*

RICK BOYER
 INTEGRITY LAW FIRM
 P.O. Box 10953
 Lynchburg, VA  24506

PATRICK M. MCSWEENEY
 3358 John Tree Hill Rd.
 Powhatan, VA  23139

JAMES N. CLYMER
 CLYMER MUSSER & SARNO, P.C.
 408 West Chestnut St.
 Lancaster, PA  17603

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
 WILLIAM J. OLSON, P.C.
 370 Maple Avenue West, Suite 4
 Vienna, VA  22180-5615
 (703) 356-5070
*Attorneys for Amici Curiae*

J. MARK BREWER
 BREWER & PRITCHARD, P.C.
 800 Bering Drive, Suite 201A
 Houston, TX  77057

August 21, 2023
*Attorney of Record

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

IT IS HEREBY CERTIFIED:

1.    That the foregoing Brief *Amicus Curiae* of Conservative Legal Defense and Education Fund, *et al*., in Support of Defendants-Appellees and Affirmance complies with the page limitation set forth by Rule 29(a)(5), because this brief contains 4,787 words, excluding the parts of the brief exempted by Rule 32(a).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 21.0.0.194 in 14-point Times New Roman.

<u>  /s/ *William J. Olson*     </u>
William J. Olson
Attorney for *Amici Curiae*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Conservative Legal Defense and Education Fund, *et al.*, in Support of Defendants-Appellees and Affirmance, was made, this 21st day of August, 2023, by the Court's Case Management/Electronic Case Files system upon the attorneys for the parties.

    /s/ *William J. Olson*
William J. Olson
Attorney for *Amici Curiae*